UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ABEL MENDOZA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:11-CV-390 |
| | § | |
| CITY OF PALACIOS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Plaintiff Abel Mendoza alleges that his former employer, Defendant City of Palacios (the City), violated the Americans with Disabilities Act (ADA) and the Texas Commission on Human Rights Act (TCHRA) when he was forced to resign because of a perceived disability—hypertension. In its motion for summary judgment, the City argues that Mendoza's claims fail because he does not have a disability and because he suffered no adverse employment action. The motion implicates the 2008 amendments to the ADA, which broadened the definition of "disability." Having carefully considered the briefing and the applicable law, the City's motion is **DENIED** for the reasons set forth below.

## I.    BACKGROUND[1]

From March 2008 until August 2009, Mendoza served as a patrol officer for the Palacios Police Department.  While on duty on August 7, 2009, Mendoza left his post to see a physician's assistant because he was concerned about his blood pressure.  He did not notify anyone in the department that he was doing so.  The physician's assistant wrote a note on a prescription pad stating that "Abel's B/P is extremely elevated—he may not work until 8/10/09."  Docket Entry No. 20-1 at 18.  Mendoza provided this note to the department and was off work August 8 and 9 as instructed.  August 10 and 11 were his regularly scheduled days off.

When Mendoza returned to work on August 12, Police Chief David Miles asked to speak with him.  According to Mendoza, Chief Miles was angry and yelling, referred to the note as "bullshit," cut Mendoza off before he could explain his health issues, and demanded that Mendoza resign his employment.  Docket Entry No. 22 at 2.  Specifically, Mendoza says he turned in his resignation because "he felt that he had no choice."[2]  *Id.*  In addition to turning in a written resignation, Mendoza submitted an exit interview form on which he checked a box indicating that he voluntarily resigned, explaining further that his "[r]esignation was demanded for health issues—high blood pressure."  Docket Entry No. 22-1.  Chief

---

[1] The Court recites the facts of this case resolving all factual disputes in favor of nonmovant Mendoza.  *See Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001) (citation omitted).

[2] The City contends instead that Chief Miles intended only to counsel Mendoza about leaving duty without notifying his supervisor, but before that conversation was finished, Mendoza interrupted Chief Miles and stated that he would turn in his resignation that day.

Miles signed this form without disputing Mendoza's characterization of his resignation as "demanded" or adding any additional reasons for the separation.  *Id.*

Mendoza filed a charge of discrimination with the Texas Workforce Commission and the Equal Employment Opportunity Commission, alleging that he "was terminated because of [his] disability, hypertension, and because [the City] perceived [him] as being disabled."  Docket Entry No. 22-2 at 2.  He also pursued unemployment benefits through the Texas Workforce Commission, which he received after the Appeals Panel found that "in demanding [Mendoza's] resignation, the Chief of Police was clearly sending the message that if [Mendoza] did not submit his resignation, he would be discharged."  Docket Entry No. 22-3 at 2.  After receiving his Notice of Right to Sue from the EEOC, Mendoza filed this lawsuit, alleging violations of the ADA and the TCHRA.  The City now moves for summary judgment on the grounds that Mendoza is not disabled and was not subject to an adverse employment decision.

## II.   STANDARD OF REVIEW

When a party moves for summary judgment, the reviewing court shall grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All reasonable doubts on questions of fact must be resolved in favor of the party opposing summary judgment.  *See Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001) (citation omitted).

### III.   ANALYSIS

To succeed on an ADA claim, the plaintiff must show that (1) he has a disability; (2) he is qualified for the position; and (3) he suffered an adverse employment action based on his disability.  *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1092 (5th Cir. 1996) (citing *Rizzo v. Children's World Learning Ctrs., Inc.*, 84 F.3d 758, 763 (5th Cir. 1996)).  TCHRA claims are properly analyzed using the same standards applied to ADA claims.  *See, e.g.*, *Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 473–74 (5th Cir. 2006) (applying federal court ADA precedent to a TCHRA claim).

### A.   "Regarded As" Having a Disability

The ADA defines "disability" as

(A)   a physical or mental impairment[3] that substantially limits one or more major life activities of such individual;

(B)   a record of such an impairment; or

(C)   being regarded as having such an impairment . . . .

42 U.S.C. § 12102(1).  Mendoza argues that he falls under this third "regarded as"

---

[3] "Physical or mental impairment" includes "[a]ny physiological disorder or condition" affecting the cardiovascular system.  28 C.F.R. § 35.104(1)(i)(A).

4 / 8

definition.  An individual is "regarded as" having a disability if he "establishes that he . . . has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment *whether or not* the impairment limits or is perceived to limit a major life activity."  42 U.S.C. § 12102(3)(A) (emphasis added).  This "whether or not" language was enacted as part of the ADA Amendments Act of 2008.[4]  The Act aimed to "make it easier for people with disabilities to obtain protection under the ADA."  29 C.F.R. § 1630.1(c)(4).

One way in which Congress broadened ADA coverage was by instructing that "the definition of 'disability' . . . shall be construed broadly in favor of expansive coverage to the maximum extent permitted by the terms of the ADA." *Id.*  Accordingly, in "regarded as" cases, a plaintiff now need only show that his employer perceived him as having an impairment; he is not required to show that he is substantially limited in a major life activity, as is still required to meet the other two definitions of "disability."  *See* 42 U.S.C. § 12102(3)(A); *see also Dube v. Tex. Health & Human Servs. Comm'n*, No. SA-11-CV-354-XR, 2012 WL 2397566, at *3 (W.D. Tex. June 25, 2012) (citing *Darcy v. City of New York*, No. 06-CV-2246 (RJD), 2011 WL 841375 (E.D.N.Y. Mar. 8, 2011)).  Further, he is not required to show "how or to what degree [his employer] believed the impairment

---

[4] The amendments took effect January 1, 2009, and because Mendoza complains of conduct occurring after that date, the ADA as amended applies to this case. *See Dube v. Tex. Health & Human Servs. Comm'n*, No. SA-11-CV-354-XR, 2012 WL 2397566, at *3 (W.D. Tex. June 25, 2012) (applying ADA as amended when alleged ADA violations occurred after January 1, 2009).

5 / 8

affected him."  *Hilton v. Wright*, 673 F.3d 120, 129 (2d Cir. 2012).

This explanation of how the amendments changed the "regarded as" definition defeats the City's argument that Mendoza has not shown an impairment that substantially limits a major life activity.  Under the ADA as amended, he is not required to do so.[5]

The City also contends that Mendoza cannot prove a "regarded as" claim because the only evidence he has that the City regarded him as disabled is his own subjective belief.  But the City undoubtedly knew about Mendoza's high blood pressure, which is a disability (*see* note 3, *supra*), because he supplied Chief Miles with the physician's assistant's note that indicated his blood pressure was extremely elevated.  That note was the basis for the heated exchange between Mendoza and Chief Miles that ended with Mendoza's resignation.  Further, the exit interview form, which Chief Miles signed, indicates that Mendoza's resignation was "demanded" because of his "high blood pressure."  Docket Entry No. 22-1. For these reasons, a fact issue exists concerning whether the City regarded Mendoza as disabled.  *See also Thoma v. City of Spokane*, No. CV-12-0156-EFS, 2013 WL 1346988, at *5–6 (E.D. Wash. Apr. 3, 2013) (denying plaintiff's motion for summary judgment "[b]ecause a jury is best situated to decide whether Plaintiff was regarded by Defendants as suffering from a disability").

---

[5] Indeed, the City did not file a reply to Mendoza's response, which noted the applicability of the 2008 amendments.

### B.     Adverse Employment Action

The City also argues that summary judgment is proper because Mendoza's

resignation was not an adverse employment action.  "[A]n adverse employment

action consists of '*ultimate employment decisions* such as hiring, granting leave,

discharging, promoting, and compensating.'"  *Pegram v. Honeywell, Inc.*, 361 F.3d

272, 282 (5th Cir. 2004) (emphasis in original) (quoting *Felton v. Polles*, 315 F.3d

470, 486 (5th Cir. 2002)).  "[I]t is beyond dispute that a termination constitutes an

adverse action."  *Id.* at 283 (citations omitted).

While the City asserts that Mendoza voluntarily resigned, Mendoza contends

that he resigned only because Chief Miles demanded that he do so.  Mendoza's

contention amounts to a claim that he was constructively discharged.  "Although

constructive discharge claims generally involve employees' allegations that they

effectively were forced to resign because of intolerable working conditions, an

employee may also demonstrate constructive discharge if she resigns after the

employer communicates that the employee will be fired."  *Parker v. Pulte Homes*

*of Tex., L.P.*, No. H-09-2743, 2011 WL 767182, at *11 (S.D. Tex. Feb. 25, 2011)

(citing *EEOC v. Univ. of Chi. Hosp.*, 276 F.3d 326, 332 (7th Cir. 2002); *Spulak v.*

*K Mart Corp.*, 894 F.2d 1150, 1154 (10th Cir. 1990)).  In such a case, constructive

discharge arises "from the employee's finding himself between the Scylla of

voluntary resignation and the Charybdis of forced termination."  *Fowler v.*

*Carrollton Pub. Library*, 799 F.2d 976, 981 (5th Cir. 1986).  Therefore, Mendoza's

resignation, if forced, can qualify as an adverse employment action.

Aside from Chief Miles's and Mendoza's conflicting accounts of the events

that led to Mendoza's resignation—a factual dispute that alone may be enough to

get past summary judgment—the exit interview form, which Chief Miles signed,

indicates that the "[r]esignation was demanded for health issues."  Docket Entry

No. 22-1.  There is thus sufficient evidence from which a jury may conclude that

Mendoza's resignation was forced.[6]

## IV.   CONCLUSION

Because issues of fact exist regarding whether Mendoza was regarded as

having a disability and whether he suffered an adverse employment action, the

City's Motion for Summary Judgment (Docket Entry No. 20) is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** this 19th day of June, 2013.

_____
Gregg Costa
United States District Judge

---

[6] Although the City does not expressly challenge the causation element of Mendoza's claim, the interview form and Mendoza's account of the meeting are also sufficient to create a fact issue on whether Mendoza's perceived hypertension disability was a "motivating factor" in any forced resignation.  *See Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008) (explaining that, although "discrimination need not be the sole reason for the adverse employment decision" under the ADA, it "must actually play a role in the employer's decision making process and have a determinative influence on the outcome" (citation and internal quotation marks omitted)).

8 / 8